TOO, INC., Plaintiff,

v.

KOHL'S DEPARTMENT STORES, INC. Windstar Apparel, Inc., Jong Kee Park and Jae C. Han a/k/a Sam Han, Defendants.

No. 01 CIV;.8200 (VM).

United States District Court, S.D. New York.

Feb. 13, 2003.

Frank J. Colucci, Colucci & Uhmans, New York City, for Too, Inc., plaintiff.

Richard G. Tashjian, Tashjian & Padian, Norman H. Zivin, Cooper & Dunham, L.L.P., New York City, for defendants.

Jae C. Han, Palisades Park, NJ, pro se.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Too, Inc., ("Too") brought this action alleging copyright infringement, trademark infringement and unfair competition. Defendant Windstar Apparel, Inc. ("Windstar") has moved the Court, pursuant to Fed. R.Civ.P. 14(a), for leave to file a third-party complaint seeking contribution and indemnification from two of Windstar's former employees, Mia DeCaro ("DeCaro") and Paula Abraham ("Abraham"). For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

The Complaint in this action was filed on August 31, 2001, and was thereafter superceded by an Amended Complaint filed on December 7, 2001 and a Second Amended Complaint filed on July 31, 2002. At this stage in the proceedings discovery is complete, having ended in late September of 2002. No trial date has been set at this time.

Windstar, which is engaged in the production and sale of apparel, hired DeCaro and Abraham in or about November, 2000. DeCaro and Abraham were employed to start up a girls sleep-wear division. Specifically, DeCaro was employed as Head Designer for Windstar and Abraham was the Windstar salesperson in charge of the Kohl's Department Stores, Inc. ("Kohl's") account, responsible for all sales to Kohl's. Windstar alleges that DeCaro represented to Jae C. Han ("Han"), Windstar's production manager, that she had created each of the designs Too alleges infringed their copyrights and trademarks and that she knew her designs were to be sold by Windstar to third party retailers, including Kohl's. Similarly, Windstar implicates Abraham for potential contribution by alleging that she proceeded to sell girls sleep-wear with the alleged infringing copyright and trademarks, knowing the sleepwear to contain designs that allegedly infringed Too's copyrights and trademarks.

Based on these allegations, Windstar seeks to implead DeCaro and Abraham to enable it to seek contribution and indemnification that Windstar alleges would be derivatively owed

to it by DeCaro and Abraham if Windstar is found liable in the main cause of action brought by Too. Too opposes the motion on the grounds that (i) there is no factual basis for Windstar's proposed allegations; (ii) there is no legal basis for Windstar's proposed third-party complaint; (iii) impleading DeCaro and Abraham will prejudice them; (iv) Windstar deliberately delayed filing this motion; and (v) the third-party complaint will delay and/or unduly complicate the trial.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Rule 14(a) of the Fed.R.Civ.P. provides, in relevant part, that: "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or party of the plaintiff's claim against the third-party plaintiff." Unless the third-party plaintiff files the third-party complaint within ten days of serving the original answer, the third-party plaintiff must seek leave from the court to file the third-party complaint. *Id.* Impleader is appropriate when the third-party defendant's liability to the third-party plaintiff is "dependent upon the outcome of the main claim" or the third-party defendant is "potentially secondarily liable as a contributor to the defendant." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir.1984) (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1446 (1971)); *Rodolico v. Unisys Corp.*, 189 F.R.D. 245, 249 (E.D.N.Y.1999). The purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate cause of action against a third-party for contribution. *See Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 54 (S.D.N.Y.1991); *McLaughlin v. Biasucci*, 688 F.Supp. 965, 967 (S.D.N.Y.1988).

The district court has considerable discretion in deciding whether to permit a third-party complaint. *Leventhal*, 736 F.2d at 31; *Gross*, 138 F.R.D. at 54. Upon determination that a third-party complaint would be appropriate and foster the interest of judicial economy, the factors to be considered in determining whether to grant leave to implead a third-party defendant are: (i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted. *Rodolico*, 189 F.R.D. at 249 (citing *Fashion–In–Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, 97 Civ. 0340, 1999 WL 500149, at *6 (S.D.N.Y. July 15, 1999); *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138, 1998 WL 872412, at *2 (S.D.N.Y. Dec.15, 1998)). "'The court must balance the benefits derived from impleader—that is, the benefits of settling related matters in one suit—against the potential prejudice to the plaintiff and third-party defendants.'" *Gross*, 138 F.R.D. at 55 (citing *Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 20 (S.D.N.Y.1985)).

### C. CONTRIBUTION

There can be no dispute that the third-party complaint for contribution proposed by Windstar arises from the "same aggregate core of facts which is determinative the plaintiff's claim". *Gross*, 138 F.R.D. at 54. DeCaro and Abraham would be potentially liable for contribution if, and only if, Windstar were found liable on Too's cause of action against it, and DeCaro and Abraham's potential liability is derivative of Windstar's liability. *See Wales Industrial, Inc. v. Hasbro Bradley*, 612 F.Supp. 510, 518 (S.D.N.Y. 1985) ("[a]n individual who causes a corporate defendant to infringe copyrights and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement."); *St. Paul Fire & Marine Ins. Co. v. United States Lines Co.*, 258 F.2d 374, 375–376 (2d Cir. 1958) ("The federal and New York state court decisions hold that third-party impleader practice encompasses subrogation claims.") Furthermore, DeCaro and Abraham are material witnesses in the main cause of action. Their testimony will be required at trial regardless of whether they are impleaded as third-party defendants. DeCaro's

and Abraham's depositions have been taken and they have had knowledge of the main cause of action, likely from the time of its inception. If the third-party complaint is not allowed, Windstar would have to start a separate action, and repeat much of the proceedings and discovery that has already occurred in the case brought by Too against Windstar. Thus, the purpose of judicial economy would be served by allowing the third-party complaint for contribution. *See Leventhal,* 736 F.2d at 31; *Gross,* 138 F.R.D. at 55; *Christos v. Trustees of Columbia University,* No. 94 Civ. 5030, 1995 WL 629000 (S.D.N.Y. October 26, 1995).

The question here is whether the benefits of judicial economy at this stage of the case are outweighed by the various concerns Too raises. First, Too challenges the legal basis for Windstar's cause of action for contribution from Abraham and DeCaro, claiming that, as alleged, Abraham's and DeCaro's involvement is too speculative or attenuated to entitle Windstar to contribution. The Court disagrees.

Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. Civil Practice Law and Rules ("CPLR") § 1401. "The theory of contribution at common law is that one who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares." *Green Bus Lines, Inc.,* 74 A.D.2d 136, 426 N.Y.S.2d 981, 989 (App. Div. 2nd Dep't 1980). The potential liability for contribution stems from the common law doctrine "that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor..." *See Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.,* 256 F.Supp. 399, 403 (S.D.N.Y.1966).

The Second Circuit has set forth the standard for finding a party liable for contribu-

tion, specifically with regard to the Copyright Act, 17 U.S.C. § 1(e), 101:

> [o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.

*Gershwin Pub. Corp. v. Columbia Artists Man., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). In order to find that a party contributed to infringement, it is required that the third-party plaintiff demonstrate that the third-party defendant either had knowledge, or "reason to know" of the infringing activity. *See Mark–Fi Records,* 256 F.Supp. at 404; *Gershwin,* 443 F.2d at 1162.

Windstar does state a claim upon which relief can be granted. In Windstar's proposed Third Party Complaint ("Proposed Complaint"), attached as Exhibit A to the Tashjian Affidavit in Support ("Tashjian Aff."), dated September 30, 2002, Windstar alleges that DeCaro and Abraham had knowledge of the alleged infringing activity and materially contributed to the alleged infringement. Specifically, Windstar alleges that DeCaro "created each of the alleged infringing designs with knowledge and intent that they be used by Windstar to sell garments to third-party retailers, including but not limited to Kohl's." (Proposed Complaint ¶ 11.) Furthermore, Windstar alleges that DeCaro advised Han that she created the alleged infringing designs and knew Han would use the information she provided to file copyright registrations for the designs. (*Id.*) Similarly, Windstar alleges that Abraham was personally familiar with Too's designs that Windstar is alleged to have infringed, ordered the alleged infringing merchandise, "engaged in communications with Windstar's manufacturer concerning design specifications" and ultimately proceeded with the sale by Windstar to Kohl's of the alleged infringing merchandise. (*Id.* at ¶¶ 15, 16.) Such factual allegations are supported by the deposition testimony of Han, Jong Kee Park ("Park"), the President of Windstar, and Abraham. (*See* deposition of Han ("Han Dep."), attached as Exhibit B to the Reply Affidavit of Richard G. Tashjian ("Tashjian Reply Aff."), dated October 22,

2002, at 27, 30, 40–45, 52–56; Deposition of Park ("Park Dep."), attached as Exhibit C to the Tashjian Reply Aff. at 21; Deposition of Abraham ("Abraham Dep."), attached as Exhibit A to the Tashjian Reply Aff. at 36–43, 65–68.) Based on these allegations, Windstar has clearly stated a claim for contribution that includes the essential elements of knowledge and material contribution to the alleged infringing conduct for Abraham and DeCaro to be liable as contributory infringers. *See Wales,* 612 F.Supp. 510 (S.D.N.Y.1985) ("[a]n individual who causes a corporate defendant to infringe copyrights and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement.")

Second, Too alleges that because there is no factual basis for Windstar's allegations in the Proposed Complaint, Windstar fails to state a claim upon which relief can be granted. Windstar counters that while one of the factors that may inform a court's decision as to whether to allow a third-party complaint is whether the third-party complaint states a claim upon which relief can be granted, under such an analysis the court is required to view all well-pleaded allegations in the complaint as true. Windstar thus argues that regardless of contradictions in the record concerning DeCaro's and Abraham's culpability, the third-party complaint does state a cause of action for contribution sufficient to satisfy the requirements for filing a third-party complaint.

■ The Court may consider the merits of a proposed third-party claim at this stage of the proceedings to the extent that the third-party complaint "would foster an obviously unmeritorious claim." *Fashion In–Prints,* 1999 WL 500149, at *6 (quoting *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 459 (S.D.N.Y.1984); *See also LNC Inv., Inc. v. First Fidelity Bank, Nat. Assoc.,* 935 F.Supp. 1333, 1337 (S.D.N.Y.1996)) ("Leave should be granted, when after considering the delay by the movant, the complication of trial, and the merits of the proposed third-party complaint, the court concludes that the benefits of consolidation outweigh the prejudice to plaintiff and third-party defendants.")

However, such an obviously unmeritorious claim is not present here. Despite the contradictions in the record concerning the nature of DeCaro's and Abraham's actions on behalf of Windstar, and whether or not they protested Windstar's actions that led to Too's claim against Windstar, there is also sufficient evidence in the record, in particular the Han Deposition, to render Windstar's claim for contribution not clearly unmeritorious.

Finally, the Court must consider whether the third-party complaint for contribution would unduly prejudice the third-party defendants or unduly delay the proceedings. The Court finds that, under the circumstances of this case, neither concern is grave enough to sufficiently outweigh the interest of judicial economy.

Windstar does not foresee the Proposed Complaint creating any need for further discovery since the depositions of DeCaro and Abraham have already been taken. Too indicates that more discovery and/or a motion to dismiss might be necessary. Since the legal issues and questions of fact in this case are essentially unaffected by the Proposed Complaint, any delay should not be extensive. Furthermore, at this stage in the proceedings, a trial date has not yet been set, and any additional discovery could still likely be completed in advance of any trial date set by the Court. *See Rodolico,* 189 F.R.D. at 253 (fact that third-party defendants had knowledge of the case and the plaintiff's claims, that a date for a trial had not been set and that trial would involve the same set of facts was persuasive in finding no undue delay).

Too also asserts that impleading DeCaro and Abraham will cause the third-party defendants great prejudice. However, the specific reasons for the prejudice that they cite, that the need for DeCaro and Abraham to obtain legal counsel is burdensome and that their testimony will be chilled, are not persuasive. The need for legal counsel would present itself at a later time, in any event, in a potential suit by Windstar for contribution from DeCaro and Abraham, and such representation would likely be more costly, since discovery and other proceedings would have to be repeated. Furthermore, as Too stresses, because DeCaro and Abraham have al-

ready testified at their deposition that they did warn Windstar of the potentially infringing designs, instructed that changes be made and were not knowingly involved in any infringing activity, it is not clear how their testimony would be chilled.

The Complaint in this action was filed on August 31, 2001, an Amended Complaint filed on December 7, 2001 and a Second Amended Complaint filed on July 31, 2002. Discovery is complete, except for any additional discovery that might be necessitated by the third-party complaint, which Windstar alleges will not be necessary since the depositions of DeCaro and Abraham have already been taken. As is conceded by Windstar, this motion is untimely, filed approximately one year after the original answer was filed. The Court notes that Windstar gives no explanation for this delay. However, Too filed a Second Amended Complaint two months prior to the filing of this motion, which Too concedes may have given rise to this motion. (*See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Leave to File a Third–Party Complaint ("Too Mem."), dated October 15, 2002, at 17.) Furthermore, discovery actually ended around the same time Windstar filed this motion, although the motion was filed nearly eight months after discovery was originally scheduled to have been completed. Given the interest in judicial economy and the other factors discussed above, the untimeliness should not prevent the filing of the third-party complaint for contribution. Moreover, the accusation made by Too that the delay was intentional and meant to harass are not sufficiently supported to convince this Court that leave to file the third-party complaint should be denied.

## D. *INDEMNIFICATION*

 Windstar's request to file a third-party complaint against DeCaro and Abraham for indemnification must be denied because it is clearly without merit. Windstar admits that since it has no contractual claim for indemnification, the basis for its indemnification claim is the common law. Under New York law, however, "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff..." *Monaghan v. SZS 33 Associates, L.P.*, 73 F.3d 1276 (2d Cir.1996) (citing *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985); *Trustees of Columbia Univ. v. Mitchell Giurgola Assocs.*, 109 A.D.2d 449, 492 N.Y.S.2d 371, 375 (App.Div. 1st Dept. 1985)) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."); *Colyer v. K Mart Corp.*, 273 A.D.2d 809, 709 N.Y.S.2d 758, 759 (App. Div. 4th Dep't 2000) (right of common law indemnification belongs to parties determined to be vicariously liable without proof of any negligent or active fault on their own part); *Green Bus Lines*, 426 N.Y.S.2d at 990 (same).

In this case, if Windstar were found to have infringed Too's copyrights, trademarks and/or to have engaged in unfair competition, attributing to it also liability from Defendants Han and Park, it is highly unlikely to be found blameless, with all fault lying on DeCaro and Abraham. *See Luft v. Crown Pub. Inc.*, 772 F.Supp. 1378, 1379–80 (S.D.N.Y.1991); *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y.1981). Han, as the production manager, whether or not he forged DeCaro's signature as she alleges, was ultimately responsible for filing the alleged infringing copyrights and was the manager in charge of producing the alleged infringing sleep-wear. Certainly Park, and likely Han as well, in their roles at Windstar, were responsible for policing the conduct of DeCaro and Abraham, even if the latter individuals were the primary infringers. *See Gershwin*, 443 F.2d at 1162 (policies of the copyright law are best effectuated if defendant was held liable, even in the absence of actual knowledge that the copyright monopoly was being impaired, for its failure to police the conduct of the primary infringer) (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir.1963)); *Luft*, 772 F.Supp. at 1379 ("All persons and corporations who participate in, exercise control over, or benefit from the

infringement are jointly and severally liable as copyright infringers."); *Lauratex,* 517 F.Supp. at 903 ("An individual, including a corporate officer, who has the ability to supervise infringing activity and had a financial interest in that activity ... is liable for infringement.") Furthermore, "[i]t has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition." *Gershwin,* 443 F.2d at 1161.

Here, Windstar could not escape all liability by relegating to Abraham and DeCaro the entire responsibility for any alleged wrongdoing on its part. Windstar does not even so plead in the Proposed Complaint or in its Memoranda of Law. Therefore, based on the dubious merit of the indemnification claim, this Court can not accept such an unlikely a third-party claim, in particular in light of Windstar's delay in filing discussed above, at this stage in the proceedings. Accordingly, Windstar's request to add a third-party claim for indemnification, for which it offers absolutely no legal support, is denied.

### III. *ORDER*

For the reasons stated above, it is here

**ORDERED** that Windstar's motion for leave to file a third-party complaint for contribution from DeCaro and Abraham is granted; and it is further

**ORDERED** that Windstar's motion for leave to file a third-party complaint for indemnification against DeCaro and Abraham is denied.

### SO ORDERED